# JONES *v.* STATE

[No. 495, September Term, 1965.]

600

*Decided March 8, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, OPPENHEIMER and McWILLIAMS, JJ.

*Elsbeth Levy Bothe* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

Appellant, charged in two pending indictments with armed robbery, has appealed a denial by a trial judge of the Criminal Court of Baltimore to grant his motion to dismiss, which alleged he has been denied his constitutional right to a speedy trial.

The State has moved to dismiss the appeal, alleging that no final judgment has been entered in the trial court; hence the

appeal is premature. Following the previous holding of this Court in *Harris v. State,* 194 Md. 288, the motion will be overruled.

Appellant bases his claim of a denial of a speedy trial on an agreed statement of facts, which, in outline, follows. He was arrested on January 8, 1965 (all dates hereafter will be in 1965, unless otherwise noted), and since has been continuously confined in jail. On January 29, the Grand Jury returned 3 indictments against him and 2 co-defendants (whose names are Goode and Sample), charging contemporaneous armed robberies of 3 alleged victims. He was arraigned on March 5, pled not guilty, and reserved his right to a jury trial. Goode was arraigned on March 31, and, after pleading insanity, was transferred to the State hospital for pre-trial medical examination.

The 3 indictments against appellant, together with 10 others against Goode (with co-defendants other than appellant) were "specially assigned" to Donald Needle, Esq., then an Assistant State's Attorney, for prosecution. As a result, the scheduling of trials on these indictments was not handled through the usual procedures of the State's Attorney's office, but through arrangements with Mr. Needle.

On March 29, counsel for the appellant, Mrs. Bothe (formerly Miss Elsbeth Levy), wrote a letter to Mr. Needle, in which, after complaining about the appellant "being forced to attend line-ups and being refused permission to consult with" counsel, she stated: "Jones has been awaiting trial since early January. Since the cases in which he is charged were assigned specially to you, I assume I should discuss a trial date with you * * *. I believe it should be soon. I intend to file a motion for severance of Jones' trial from that of his co-defendants. Please get in touch with me on the above."

Mr. Needle replied by letter, as of March 31, in which, *inter alia,* he stated: "I intend to set these cases for trial in the very near future. If possible, I would like to discuss the cases with you before trial. * * *. Sorry that you have had trouble trying to contact me, but I have been extremely tied up in Court work * * *."

Early in April, appellant's counsel called at the office of Mr. Needle to discuss a trial date. He took the position that appel-

lant should not be accorded a separate trial, and telephoned the Hospital to urge that the examination of Goode be expedited. Earlier, on February 17 and March 15, the other co-defendant, Sample, had filed preliminary motions. Mrs. Bothe objected to the delay and requested that a trial date be set, but this was not done.

A written notice requesting a severance was filed by Mrs. Bothe on April 30, and she sent a copy thereof to Mr. Needle together with the following letter:

"April 30, 1965

"Dear Donald:

Enclosed herewith is Motion for Separate Trial in the above, original of which is also being mailed this date to the Clerk's office.

"I learned today that [Sample] is demanding his counsel's withdrawal from the case, and that Judge Sklar is probably going to appoint new counsel for Sample. Inasmuch as Jones has been awaiting trial nearly four months because of one, and now perhaps also the other co-defendant's delays, it would seem that his trial should proceed separately for that reason.

"I have a case in on Tuesday morning (May 4th), and want to try to see Judge Sklar sometime that day with reference to Jones' severance and speedy trial. Would you call me Monday, and say when it would be convenient for you to go with me to his chambers.

(Miss) Elsbeth Levy [Bothe]"

Appellant's counsel was unsuccessful in arranging the suggested meeting between counsel for the parties and the Court, but met with the trial judge, in the absence of the Assistant State's Attorney, sometime during the week preceding May 24. On May 24, she wrote to Judge Sklar:

"May 24, 1965

"Dear Judge Sklar:

"You may recall that I talked with you last week with reference to the above named defendant's Motion for Severance on his co-indictments with defendants Abraham Goode and Hayes Sample.

"I pointed out to you at that time, that Jones had been incarcerated awaiting trial since the first week in January, 1965; that one of the co-defendants (Goode) had been referred to Clifton T. Perkins State Hospital for pre-trial mental examination which had not been completed; that the other (Sample) had requested a change of lawyers which was delaying his trial preparations; and that the State was refusing to set a trial date for Jones, despite my persistent requests on his behalf, until the others were ready to be tried with him. Jones has been ready for many weeks.

"I also asked that you grant a severance on the basis that Jones could not receive a fair trial in the event that incriminatory statements of the co-defendants were admitted. All parties have asked or reserved their rights to be tried before a jury, and it is difficult to conceive that a jury would disregard the Court's admonition to ignore their application to Jones who has consistently denied his guilt.

"You suggested that I ask the Assistant State's Attorney handling the cases, Mr. Needle, to see you last week, and that I might prepare a memorandum of law on the subject of Jones' right to severance. I have made several attempts to convey your suggestion to Mr. Needle, both by leaving telephone messages for him, and by trying to find him in his office. I have not been able to contact Mr. Needle, and we still have no trial date separate or apart."

* * *

"I do not feel it is necessary to thoroughly explore this defendant's absolute right to a separate trial as this, in any event, seems to be his only remedy to the right of a *speedy* trial. I feel that the State should, at this point, be compelled to try Jones promptly, or to dismiss the indictments against him for want of prosecution. He has been in jail and ready for trial for nearly five months!

"In the event that Jones' case is not set for trial

within one week, I will move for its dismissal, and trust that you will take appropriate action. I hope that you will see fit to order a prompt and separate trial for this man, and that it will not be necessary to afford him his rights.

Yours respectfully,
(Miss) Elsbeth Levy [Bothe]"

Although there was no written response to the above letter, in early June, the indictments were set for trial, as to appellant alone, the trial date being June 16, before Judge Sklar and a jury, in the Criminal Court of Baltimore. The trial date was agreed upon by counsel for the appellant and the State.

During the last weeks of June, the State's Attorney's office had scheduled an unprecedented number of cases for trial in an effort to clean up a large backlog of untried cases prior to the summer recess.

Both parties had summoned witnesses, and were prepared to proceed with trial on June 16. However, the appellant's case was not reached, due to a pending jury trial which was held over from the preceding day and continued on into the following day. Because of the extraordinarily heavy dockets during this period in the Criminal Courts of Baltimore, appellant's case was not reset for a jury trial before the end of the term. On this subject, Mr. Needle wrote to Mrs. Bothe.

"June 24, 1965

"Dear Miss Levy:

"Confirming our telephone conversation of yesterday, please be advised that I will be out of town from June 25, 1965, to July 10, 1965, attending military summer encampment in Savannah, Georgia, and therefore will be unable during that time to prosecute the above-captioned cases which have been specially assigned to me.

"As you know, the above cases were set on the docket for trial, before Judge Albert Sklar and a jury on June 16, 1965, but unavoidably could not be reached because of another pending jury trial.

"It is my understanding that there will be no juries

available after next week, during the summer recess. Furthermore, it will be physically impossible for any Assistant State's Attorney to try these cases with a jury next week because of the already overcrowded trial dockets.

"If you desire to have the cases tried next week non-jury, Mr. A. Samuel Peregoff of this office will be happy to accommodate you and has consented to prosecute them at my request. Also, I will be happy to try the cases non-jury after my return from military duty and will, if necessary, come in during my vacation period during the summer to accommodate you.

"If your client wants to be tried by a jury, however, there seems to be no alternative but to set a trial in September when jurors will be available.

"Please contact either myself or Mr. Peregoff concerning this matter. Kindest personal regards.

> Yours very truly,
> /s/ Donald Needle"

On June 23, co-defendant Goode (who had been released from the Hospital on May 17) was tried on a single statement of facts on all three indictments—Nos. 212, 211 and 210—by Judge Sklar sitting without a jury. He was found guilty on all indictments, and sentenced to a total of twenty years in the Maryland Penitentiary with referral to Patuxent Institution. Some of the other cases against Goode remain open.

On June 28, applicant filed a petition for a Writ of Habeas Corpus in the Baltimore City Court, reciting the fact of his detention without trial since January 8, and that:

"Petitioner is now advised that his case cannot be re-set for trial before a jury before September, 1965, and that he must either elect to proceed before the Court, as he does not desire to do, or remain incarcerated for this additional time which will then total nine months awaiting trial.

"Petitioner believes, under the above facts, that he has been denied his right to a speedy trial by an im-

partial jury (Maryland Declaration of Rights, Article 21), and therefore demands his immediate release from the custody of the Respondent."

Hearing was held in open court before Judge Sklar on June 30, and the petition was denied. The court suggested that the parties might be able to procure a jury during the summer recess, in which case the court could preside at a trial during the first two weeks of August.

Appellant's counsel and the State's Attorney endeavored through the office of the Jury Commissioner, to procure a jury during the summer recess, but this could not be arranged. In late August, appellant's case was set for trial before a jury on September 15, one of the first days on which a jury panel would be available at the new term. On September 15th, appellant orally moved for dismissal of the prosecution because of his failure to have received a speedy trial. The motion was heard and denied by Judge Sklar, and the case then proceeded to trial.

The State called only Indictment No. 212 to which appellant neither concurred nor objected.

At the trial, the State offered evidence to the effect that Goode, and Sample, and a man who "looked like" appellant, acting in unison, had accosted one Laird Marshall (alleged victim in Indictment 212), Tyrone Johnson (alleged victim in Indictment 211), and Robert Spence (alleged victim in Indictment 210) who were walking along a street in Baltimore, when they were accosted by 3 men. At gunpoint, they were forced to go to a vacant lot, where Marshall's and Johnson's wallets, with their contents, and Spence's coat were taken from them. The affair took about 10 minutes, and the victims notified the police as soon as the culprits left them. A jury was selected, and trial on that indictment proceeded, at the conclusion of which the jury returned a verdict of "not guilty" as to Indictment 212. Upon the return of the verdict, appellant, in open Court, immediately requested that the State call Indictments 210 and 211 for trial. The State declined to do so, because a full schedule of cases had been set for trial in the Court which were waiting to be heard. The following week, Mr. Needle advised Mrs. Bothe that the State intended to bring appellant to trial on one or both of the remaining indictments, and

the earliest date another jury trial could be scheduled was October 21, after a new jury panel would be available.

On October 8, appellant filed a motion to dismiss Indictments 210 and 211 on the ground, *inter alia,* that the State had failed to afford him a speedy trial, which motion was answered by the State on October 11. This was the first written motion to dismiss the Indictments filed by appellant.

On October 11, this Court decided the case of *Schowgurow v. State,* finding that Maryland indictments, including those pending against appellant, were defective. On October 20, appellant, in proper person, filed a motion to dismiss Indictments Nos. 210 and 211 under the doctrine of the *Schowgurow* case. Due to possible implications of the *Schowgurow* case, all criminal jury trials, and most criminal trials were temporarily suspended in the Criminal Courts of Baltimore. Appellant could not have been tried before a jury as scheduled for October 21. On that day, however, Judge Sklar held a hearing on both of appellant's motions to dismiss—that here appealed, and that made in proper person pursuant to *Schowgurow.* The decision was held *sub curia.*

On November 2, appellant was re-indicted by a properly constituted Grand Jury in Indictments Nos. 4856 and 4857, which indictments are substantially identical to Indictments Nos. 210 and 211. On November 9, appellant was called for arraignment before Judge Sodaro, on Indictments 4856 and 4857. Motion to dismiss Indictments Nos. 210 and 211 was granted (on the *Schowgurow* grounds). Appellant entered no plea to Indictments Nos. 4856 and 4857, but filed a motion to consolidate and transfer the open proceedings under Indictments Nos. 210 and 211 to Indictments Nos. 4856 and 4857, and moved to dismiss the latter indictments on the previous grounds, i.e., failure of speedy trial, double jeopardy and *res judicata.*

The motion to consolidate was granted November 17, and on November 18, Judge Sklar filed an order denying the motion to dismiss from which this appeal is brought.

Trials on Indictments Nos. 4856 and 4857 were set by the State's Attorney's office for December 10. Postponement was granted at appellant's request, pending disposition of this appeal.

There is little difficulty in stating the law relating to the alleged denial of a speedy trial; however, there is considerable difficulty, at times, in applying that law to the circumstances of a particular case. This right to a "speedy trial" is guaranteed to all who are accused of crime by Article 21 of the Maryland Declaration of Rights and by the Sixth Amendment to the Federal Constitution, both of which are self executing. *Harris v. State, supra.* Since there is no definition of the term in the Constitutions, and the varied circumstances surrounding particular cases are innumerable, and, for the main part, unforeseeable, the term has properly been held to be a relative one, with the determination of the question as to whether or not an accused has been denied a speedy trial depending upon the facts of each particular case. *State v. Murdock,* 235 Md. 116. 22A C.J.S., *Criminal Law,* § 467 (4), states the general rule thus:

> "A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances."

Compare *United States v. Ewell,* 34 U. S. L. Week 4154 (U. S. Feb. 23, 1966). And the right is universally recognized as one that may be waived. *State v. Murdock, supra.*

Having these principles in mind, we restate the facts in more narrative form. They show that after appellant had been incarcerated for nearly 3 months his counsel called this fact to the attention of Mr. Needle, and requested an early trial date. His response stated, "I intend to set these cases for trial in the very near future." However, about 2 months later, after additional requests of defense counsel to the prosecution for a trial date, we find defense counsel conferring with, and thereafter writing to, the trial judge, calling to *his* attention that appellant had been confined in jail awaiting trial for "nearly five months," and asking for a speedy trial. A trial date was set for June 16, but a case which had been begun the preceding day and continued for trial into the 16th, was given precedence over appellant's trial date, and he was not then tried. At this point,

the stipulation says, "because of the extraordinary heavy dockets during this period in the Criminal Courts * * *, it was not possible to reset appellant's case for a jury trial before the end of the term." (This necessitated, according to the State, the cases going over to the next jury term after the summer recess). We are unable to understand why this was true, or constitutionally permissible under the circumstances, if true; but more will be said concerning the same later.

It should be noted that Mr. Needle, in his letter of June 24, which, of course, was after the 16th, stated "there will be no juries available after next week," inferentially showing that juries were available and in court for some 2½ to 3 weeks after the 16th, but no jury-trial date had been offered appellant after his trial was not reached on the 16th. On the contrary, his counsel was informed that he could only receive a prompt trial, by relinquishing his right to a trial by jury (which is considered a very precious one by most of the citizens of the United States), and, if he failed to waive this right, he would have to remain confined for an additional 2 to 2½ months before trial. His requested relief by way of petition for a writ of habeas corpus of June 28 was unavailing, as was his counsel's attempt to obtain a jury "during the summer recess." Finally, the cases against appellant were set for jury trial on September 15, at which time his counsel moved for dismissal of the indictments for failure of prosecution thereof speedily. The motion was denied and the State called for trial only Indictment 212. After a trial, at which evidence covering all 3 indictments was received, the jury rendered a verdict of "not guilty." Appellant's counsel immediately requested trial on the other 2 indictments. This request was denied, counsel being informed that appellant would not be tried until on, or after, October 21, at which time a new jury panel would have been selected. This entailed, at least, another month's delay. On October 8, appellant filed a written motion to dismiss for failure to prosecute. This motion was heard on October 21, and held *sub curia* by the trial judge.

In the meantime, on October 11, our decision in *Schowgurow v. State,* 240 Md. 121, relating to the constitutional composition of juries whose members were required to signify a belief in the existence of God, was decided. On October 20, appel-

lant, in proper person, moved to dismiss the indictments under the holdings of that case. On November 2, appellant was re-indicted. It will, therefore, be noted that the potential delay in bringing appellant to trial occasioned by *Schowgurow* was the period between October 21 and November 2 (with an allowance of a short time thereafter to set as the trial date). However, we shall eliminate any question relative to *Schowgurow* by considering whether the motion to dismiss heard by Judge Sklar on October 21 should have been granted, for it is evident, in the absence of subsequent waiver, if that motion should have been granted, the subsequent one resulting in this appeal, likewise, should have been granted.

We feel constrained to hold that appellant has been denied his constitutional right to a speedy trial. The right is afforded to everyone, without regard to guilt or innocence. Of course, appellant was not entitled to demand an immediate trial, and he does not so contend. The prosecution was entitled to any reasonably needed time for preparation for trial, and also any reasonably needed time to conform with the trial court's calendar of criminal cases in the actual trial of the cases. On the other hand, when the State indicts a person for crime, it must be ready to afford him a trial, when he requests the same, without undue delay, or cease the prosecution.

There is, of course, no question of waiver involved herein; the appellant and his counsel made repeated efforts to bring the cases to trial. Shortly after his being indicted, there were several preliminary motions filed by co-defendants, but none of them was of a complex nature. The State was entitled to a reasonable delay in having these cleared. But beginning in the latter part of April, we might say almost continuous efforts both to the prosecutor and the trial judge, were made to get the cases tried. No question of unavailability of State's witnesses, or lack of time for preparation by the State, was involved. The only reason he was not tried on June 16 was that another case was started on the preceding day and carried over to June 16. By this time, appellant's cases called for special attention. Of course, everyone realizes the importance of the trial judges' having every reasonable control over, and latitude in, fixing trial dates for cases to be tried before them. However, they must heed the mandates of the constitution relative thereto, as everyone else

must. At this stage of the proceedings, the court had a man before it, who had been incarcerated for over 5 months and had made repeated requests, both to the prosecutor and the trial judge, for a recognition of his constitutional right to a speedy trial. The State was prepared for trial and so was the accused. Under these circumstances the prosecutor and the trial judge should have arranged for a very prompt jury trial thereafter. As this Court stated in *Harris v. State, supra,* "while the State's Attorneys usually prepare criminal dockets, and assign dates for trial of cases, yet the judge can always take control and order a case assigned for trial." See also *State v. Smith,* 89 A. 2d 404 (N. J.).

This was not done, and the only excuses offered were that the prosecutor would be away, for a time, on summer military encampment, overcrowded trial dockets, and the lack of a jury during summer recess of the courts, the appellant being informed that the earliest date upon which he could obtain a jury trial would be September 15, some 3 months later. The above excuses, under the attendant circumstances, were not valid ones in our judgment. As we said above, when the State indicts a defendant, it must, after his request, try him without undue delay. No attempt was made to show the status of any of the other defendants whose cases had been set on the "overcrowded trial dockets," or that any of such defendants had been pleading for an early trial date. Also, it seems unusual to say that a jury could not be obtained during the "summer recess." We know of no reason why a jury could not have been empanelled, even if the court were required to summons talesmen. Had appellant's cases been promptly set for jury trial after June 16 (even though it entailed taking another case out of the assignment), or had a jury been empanelled shortly thereafter and the cases tried, a saving of some 3 months' time would have resulted.[1]

---

1. Although an agreed Statement of Facts has been accepted and applied by the Court of Appeals, the Court has since been informed by the Supreme Bench of Baltimore City that it has always been the practice to hold the last Jury in June to the second Monday in September, the same being subject to call throughout the entire summer, and that, in fact, such juries have, from time to time, been brought in during the summer months for the trial of cases.

However, appellant's oft-repeated demands were not successful, and he was not brought to trial until September 15, when he was acquitted of one of the charges. Even after this acquittal, he was again denied the right to go to trial on the other 2 indictments until a new jury was obtained, which involved another month's delay. (Had this trial occurred shortly after the State was prepared to proceed with trial, let us say in May or June, the short time consumed in awaiting a new jury would have been unobjectionable.)

When Judge Sklar heard the motion to dismiss on October 21, appellant had been incarcerated for some $9\frac{1}{2}$ months. After reviewing the facts as we have set them out above, we cannot say that appellant's proposed trials were "speedy" in a constitutional sense. They were not held "as soon as the prosecution, with reasonable diligence [was] prepared for [them]." On the contrary, October 21 was long after the State was adequately prepared for the prosecution, and the delays were not caused by sound, necessary or legitimate reasons, but were occasioned more to meet the convenience of individuals. We, therefore, hold that Judge Sklar should have granted the motion to dismiss heard on October 21, 1965; hence the order appealed from herein must be reversed, and the case remanded for the entry of an order consistent with this opinion.

Our holding above, renders it unnecessary to consider appellant's other contentions.

*Appellee's motion denied; order reversed and case remanded for the entry of an order consistent with this opinion.*