## SAMUEL LEE CAESAR, a/k/a LEE SAMUEL CAESAR *v.* STATE OF MARYLAND

[No. 547, September Term, 1969.]

*Decided July 16, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Russell J. White* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 8 March 1966 the Court of Appeals found that James Lawrence Jones had been denied his constitutional right to a speedy trial on two indictments charging armed robbery pending against him and ordered that his motion to dismiss them be granted. *Jones v. State,* 241 Md. 599. Thereafter, it became fashionable for defendants to allege that the right to a speedy trial guaranteed by the

6th Amendment to the Constitution of the United States and by Article 21 of the Declaration of Rights of the Constitution of Maryland had been violated. Even if they did not fall within the ambit of *Jones* so that prosecution of them would be barred, at the least a trial on the merits could be postponed for a substantial time on a denial of their motion to dismiss, since the matter was immediately appealable. *Allen v. State,* 1 Md. App. 249. Thus, it is not surprising that we have, during the existence of our Court thus far, considered the question in some half a hundred reported cases that bobbed up in the wake of *Jones.* The holding in *Jones* was not predicated on a new interpretation of the constitutional guarantees, or on a rule of law regarding them in *Jones* enunciated, or on a rationale not previously followed, but on its particular facts. It was simply that the Court did not consider as valid in the face of Jones' oft-repeated demands for trial, the State being prepared for trial, excuses offered that the prosecutor would be away, for a time, on summer military encampment, overcrowded trial dockets, and the lack of a jury during summer recess of the courts. In the cases which came before us we developed the test to be applied in determining whether an accused has been denied his constitutional right to a speedy trial. We summarized the governing principles in *Wilson v. State,* 8 Md. App. 299, 306-307:

> "The right to a speedy trial is a relative one and the time within which trial must be had to satisfy the constitutional guaranty depends on the facts and circumstances of the particular case. *Jones v. State,* 241 Md. 599; *Johnson v. State,* 4 Md. App. 648; *Kelly v. State,* 2 Md. App. 730. Four factors are relevant to a consideration of these facts and circumstances in determining whether a delay in trial assumes constitutional proportions: (1) the length of the delay, (2) the reason for the delay, (3) whether prejudice to the accused has resulted, and (4) whether the accused has waived his right to a speedy trial.

*Barnett v. State,* 8 Md. App. 35; *Stevenson v. State,* 4 Md. App. 1. Waiver will, of itself, dispose of a contention that an accused has been denied a speedy trial; 'but the other three factors are relative and must be considered together in arriving at a decision in each case.' *Hall v. State,* 3 Md. App. 680, 686. Where the delay in bringing the case to trial is 'substantial' in the constitutional sense, a *prima facie* showing of prejudice is deemed to exist and the State in such case has the burden of proving that there was no more delay than is reasonably attributable to the ordinary process of justice and that the accused suffered no serious prejudice thereby; when the delay is less than 'substantial,' even if it is purposeful, oppressive, or negligent, at least some showing by the defendant of 'a strong possibility of prejudice' is required. *King v. State,* 6 Md. App. 413; *Frazier v. State,* 5 Md. App. 88; *Stevenson v. State, supra.* There is, however, no precise rule by which to determine when a delay is 'substantial;' the determination must be made in light of the facts and circumstances of each particular case. *Stevenson v. State, supra.* * * *

In determining the question whether, under the circumstances, a delay is substantial or less than substantial, we recognize the principle espoused by the Supreme Court in *United States v. Ewell,* 383 U. S. 116, 119, that 'because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace.' We also recognize that an accused is protected only against unreasonable or unnecessary delay; and that the State is entitled to time to prepare for trial with reasonable diligence and also to any reasonably needed time to conform with the trial court's calendar of criminal cases

in the actual trial of the case. See *Jones v. State, supra; Bryant v. State,* 4 Md. App. 572; *Fabian v. State,* 3 Md. App. 270. We have thus taken into account the fact that in the course of the administration of justice, administrative problems sometimes arise of such consequence as to make a delay on the part of the State in bringing a case to trial not one stemming from a failure on its part to proceed with due diligence, e.g. the administrative problems encountered by the State's Attorney of Baltimore City in the wake of *Schowgurow v. State,* 240 Md. 121. See *Hall v. State, supra; Brown v. State,* 2 Md. App. 388. On the other hand, we have given consideration to the fact of incarceration without bail pending trial in assessing whether a trial delay is unreasonable, concluding that, of itself, such incarceration is not controlling in determining whether the right to a speedy trial has been denied. *State v. Long,* 1 Md. App. 326. We have also been mindful of the fact that the constitutional guaranty of a speedy trial is one which seeks to prevent lengthy pretrial imprisonment where an accused is unable to make bond. See *Hanrahan v. United States,* 348 F. 2d 363 (D.C. Cir.), and cases cited at page 367."

It is clear from these principles that the right to a speedy trial does not preclude the rights of public justice and that an accused is not without obligation to establish his claim within defined guidelines.

Four indictments were returned against Samuel Lee Caesar, also known as Lee Samuel Caesar. Three of them arose from the same incidents occurring on 4 October 1968 when he allegedly entered a branch of the Provident Savings Bank and robbed an employee and two customers at gun point. The fourth charged larceny of the use of an automobile two days before. These indictments have not come to trial on the general issue. On 30 October 1969

the lower court denied a motion to dismiss the indictments made on the ground of denial of a speedy trial and it is the appeal from that denial which is now before us.

Caesar was confined to jail under a commitment filed 9 October 1968, presented on 17 October and indicted on 24 October. He was arraigned on 27 November and counsel was appointed for him on 29 November. The docket entries disclose the following: a motion for discovery was made in proper person on 25 October and 16 December 1968 and by appellant's attorney on 2 December 1968; answers were filed by the State on 19 November and 22 November 1968 and 9 January 1969; a motion to suppress evidence was made in proper person on 30 October 1968 and heard and denied on 28 October 1969; motions to suppress were made in proper person on 13 and 16 January 1969, heard on 28-30 October 1969 and denied; a motion for a speedy trial was made on 25 April 1969; an oral motion to dismiss for lack of a speedy trial was heard and denied on 23 June 1969; a motion to dismiss was made in proper person on 1 and 6 August 1969 and hearing requested; a hearing on the motion to dismiss of 1 August 1969 was had on 28-30 October 1969 and denied.

At the hearing on the motion to dismiss in October 1969 Caesar testified. He recounted that he was arrested on 4 October 1968, charged with three offenses of armed robbery and one of unauthorized use of an automobile, bound over at a preliminary hearing on 9 October, indicted on 24 October and arraigned on 27 November. It was stipulated that when defense counsel's motion for discovery filed 29 November was answered by the State on 9 January 1969, the case was set for trial on 20 February. It appeared that it was postponed that day due to absence of State's witnesses and Caesar was brought back in the next day—a Friday. Pretrial proceedings on a motion to suppress eyewitness identification were commenced that morning. At noon, as defense counsel had a case in the Federal Court, the matter was continued. The transcript of the proceedings at that hearing discloses

that Fred Grant, Esq., the Assistant State's Attorney, indicated the matter could be resumed the following Monday.

> "THE COURT: Well, my docket depends on how you put these cases in, Mr. Grant.
>
> MR. GRANT: Perhaps we can put our witnesses on call with the possibility that Mr. White can come here on Monday, and we can have the witnesses here.
>
> MR. WHITE (Defense Counsel): Fine. I will notify you as soon as I can ascertain this on Monday morning.
>
> MR. GRANT: We will put the witnesses on call. Monday afternoon or Tuesday. All right.
>
> THE COURT: All right. Just whenever you gentlemen can set it in.
>
> MR. GRANT: All right. We will make every effort, if it's possible for Mr. White to be here, we'll set it in for Monday.
>
> THE COURT: Fine."

It was not put in the assignment. On 6 March Caesar wrote Judge Basil Thomas, who had presided at the hearing. It was an articulate letter clearly expressing what Caesar desired to convey. He outlined what had occurred and stated that he "has received, although not from an official source, some very disturbing information concerning a possible delay in the continuation of the proceedings until possibly the Autumn." He asserted that this, "if it be true, is quite upsetting to Defendant and a decision which Defendant *strongly objects to* because of the prejudicial harm it will work on Defendant's defense and, because *such a delay will deny and violate Defendant's constitutional rights to a Speedy Trial and Due Process of the Law.*" (emphasis in original). He asked the judge to expedite his trial and protect his right to a speedy trial and due process of law. This letter was answered by Judge Thomas' bailiff under date of 11 March. It stated that the bailiff had talked to Grant who

told him the case would be set in as soon as the docket would allow, that Judge Thomas was involved in "a large complex of cases which are expected to continue for a period of about three to four weeks. As soon as these cases conclude, your case will be set in for hearing." It concluded: "There is no reason for an untimely delay in your case, and I will personally see that it is put on the docket promptly." When the case was not put in by the middle of April, defense counsel filed a motion for a speedy trial on 25 April. Caesar testified that about 10 May he received a letter from his counsel informing him that the case was set for trial on 23 June. On 23 June he was brought to court and was told Grant was elsewhere. His counsel made an oral motion to dismiss and the motion was denied. He testified that Judge Thomas at that time requested the State's Attorney's office to have someone in court during that week to complete the hearing on the motions started in February. On 26 June he was again brought into court but the hearing was postponed. The next day he wrote his counsel that he was told the hearing was postponed "due to the absence of my attorney" and that Grant sent him word by the jail officer who works Judge Thomas' court to "tell him to call his lawyer," and that "he [Grant] was leaving for Denton, Md." Under date of 3 July defense counsel wrote Caesar: "The recent postponement of your case was not caused by me. Mr. Grant called me that morning and told me he could not be in court because of pressing matters pertaining to his duties in connection with investigation of narcotic offenses." Caesar wrote his attorney again on 7 July. A copy of that letter is not in the record but the attorney's reply is. He said: "It would seem that in view of our Motion to Dismiss for lack of a speedy trial at the last hearing, the State's Attorney's office would make an all-out effort to have the case set in for trial." On 1 August Caesar filed a Motion to Dismiss in proper person. It detailed the history of the case, alleged denial of the constitutional rights to a speedy trial and averred that his defense was "acutely impaired" by the

unnecessarily long delay; defendant is apprehensive about his ability to adequately defend himself and to accurately remember many events in their true prospective." Defense counsel wrote Grant on 18 August. He called attention to the fact that no date had been set for the hearing on the Motion to Dismiss. On 26 August counsel wrote Grant that he still had not heard from him regarding the case and again so wrote him on 10 September. On 11 September Caesar wrote directly to Judge Thomas asking for his assistance in bringing the matter "forward for a hearing" on the Motion to Dismiss. He told the judge that numerous efforts had been made by his attorney through Mr. Grant to have a hearing "but to no avail. Mr. Grant has chosen to *completely ignore* Mr. White's efforts." (emphasis in original). No reply was received. He wrote Judge Thomas again on 12 October, referred to his letter of 11 September and again sought his efforts in "securing a hearing" on the Motion. The letters, or copies of them, referred to by Caesar in his testimony were received in evidence. Judge Thomas referred to the letter received from Caesar under date of 12 October. He said that his bailiff had written Caesar on 15 October that the hearing had been set for 22 October. On 21 October the bailiff wrote Caesar that the date was 27 October rather than 22 October. Defense counsel told the court that he had asked Grant "on many, many occasions when I would see him in the halls about putting the case in for trial. I, very frankly, was a little embarrassed myself on the fact that it hadn't been put in." Grant said, "I would stipulate and verify that Mr. White did in fact consult with me in oral communication about the setting of the case." The State offered no evidence on the question. In denying the Motion to Dismiss the court found that the delay was not substantial and that appellant had not proved a strong possibility of prejudice.

It is the period from 21 February to 28 October 1969 that is material. Patently, trial on the merits could not be had until the motion to suppress evidence had been determined and it was the State's failure to make possible

the conclusion of the hearing on this motion, started 21 February, that prompted the motion for a speedy trial on 25 April and the motion to dismiss for lack of it on 1 August. The State did not deign even to attempt to explain why it did not schedule a resumption of the hearing on the motion to suppress until 23 June, nor why Grant's duties elsewhere on 23 and 26 June took precedence over the prosecution of appellant, or why, if, his other duties did prevent his attendance in court on appellant's matter on 23 and 26 June, another Assistant State's Attorney could not have appeared on behalf of the State, or why, thereafter, it did not set a resumption of the hearing until 28 October. And we point out, as stated in *Harris v. State*, 194 Md. 288, "while the State's Attorneys usually prepare criminal dockets, and assign dates for trial of cases, yet the judge can always take control and order a case assigned for trial." See *Jones v. State, supra*, at 611. The court here, through it's bailiff, on 11 March 1969 wrote appellant that it would see that the case would be put on the docket promptly. Why this was not done is not explained.

There is no question of a waiver here. Motions for speedy trial and to dismiss the indictments for lack of it were filed, the court was written, the prosecutor was written, defense counsel personally talked to the prosecutor, all with one objective—to have the hearing on the motion to suppress concluded so trial on the merits could be had. We consider that on the particular facts and circumstances of this case the delay was "substantial" in the constitutional sense. See *Wilson v. State, supra.* Overall it was about twelve months from the time of indictment to the time the motion to suppress was determined and about eight months from the time the hearing on the motion to suppress was commenced and continued until the time it was resumed. It is not the length of the delay here, but the reasons for it that are significant. There is nothing in the record from which we can find that the delay was caused by sound, necessary or legitimate reasons. We can only conclude that it was occasioned more to meet

50

the convenience of individuals. The delay here was more than mere negligence on the part of the State. Appellant in his brief proclaims that "the Assistant State's Attorney exhibited unpardonable neglect and total indifference to the rights of the appellant." We cannot say on the record before us that this is an unfair comment. As the delay was, in the circumstances, substantial, it was the obligation of the State to show that there was no more delay than was reasonably attributable to the ordinary processes of justice and that the accused suffered no serious prejudice thereby. We find that it did not meet this burden and hold that on the facts and circumstances of this case, appellant was denied his constitutional right to a speedy trial.

*Order denying motion to dismiss the indictments reversed; case remanded for the entry of an order dismissing the indictments; the mandate of this court to issue forthwith.*