## STATE OF MARYLAND *v.* CHARLES ERNEST HUNTER

[No. 109, September Term, 1972.]

*Decided October 26, 1972.*

The cause was submitted on brief to MORTON, ORTH and GILBERT, JJ.

Submitted by *Francis B. Burch, Attorney General, Gary Melick, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Michael S. Libowitz, Assistant State's Attorney for Baltimore City,* for appellant.

No brief filed on behalf of appellee.

GILBERT, J., delivered the opinion of the Court.

The State of Maryland, appellant, has appealed the entry by a judge in the Criminal Court of Baltimore of a "general dismissal" of an indictment that charged

Charles Ernest Hunter, appellee, with the crimes of robbery with a deadly weapon, assault, and related charges.

The State contends that the judge abused his discretion in "ordering dismissal of the indictment."

The record reveals that the appellee was arrested on the night of September 3, 1971, along with Charles Howard and Tanya Robinson,[1] for the assault and the robbery with a deadly weapon of a taxicab driver. The amount taken was two dollars. Counsel was appointed to represent the appellee on October 12, 1971, but thereafter withdrew because appellee's privately retained attorney entered his appearance.

The latter attorney filed a "Motion To Dismiss" on December 13, 1971, in which he alleged, *inter alia,* that the appellee had been incarcerated *sans* indictment from September 3, 1971, that he had made efforts to obtain a speedy trial, and that he had "lost contact" with "many important witnesses." The motion requested the dismissal of all "charges against [appellee] or in the alternative to release [appellee] on his own recognizance until such time as the State sees fit to present his case to the Grand Jury of Baltimore City." [2]

The indictment was brought forth on January 24, 1972. The motion to dismiss was heard on February 17, 1972, and the "general dismissal" was entered on March 1, 1972.

At the hearing on the motion, appellee's counsel recited the history of the case, in which he included his endeavors to have the matter taken before the Grand Jury. He further informed the court that the file had been misplaced in the office of the Clerk of the Criminal Court of Baltimore. Neither of the contentions was denied by the State. The main effort, however, on the part

---

1. Charles Howard and Tanya Robinson were indicted separately.

2. A bail of $10,000.00 was set on the appellee at the time of his arrest. Later, a judge of the Supreme Bench indicated that he would reduce the bail to $5,000.00 if the appellee could post the same. Appellee declined to post the $5,000.00 bail because of, *inter alia,* his mistaken belief, that the case would be called to trial within 30 days.

of the appellee was directed toward a showing of actual prejudice to the appellee occasioned by the State's Attorney's delay in taking the case before the Grand Jury.

The delay in the instant case was approximately 4½ months from the date of arrest to the date of indictment, one month from the filing of the motion to dismiss to the date of the indictment, and 24 days from the date of the indictment to the date of the hearing on the motion.

The State here argues that the "lower court's dismissal of the instant indictment was couched in the terms 'general dismissal' and that neither legal nor factual findings were made in support of the court's conclusion." We note from the record that the trial judge did state:

> "I could prepare [specific findings] if it's necessary. I have gone over the cases and I have gone over the memorandum of the State and of the defendant and I discussed or told you, I think, earlier what I propose to do. But if it's needed—I would not be able to give it forthwith, but I will do it if you would request it."

The Assistant State's Attorney responded that the State "would not request it at this time." They apparently did not request it at any other time either, as the record is devoid of such specific findings.

The right to a speedy trial is a guarantee afforded to every accused by the Sixth Amendment to the Constitution of the United States and by Art. 21 of the Maryland Declaration of Rights. The Supreme Court, in *United States v. Ewell*, 383 U. S. 116, 15 L.Ed.2d 627, 86 S. Ct. 773 (1966), speaking through Mr. Justice White, said that the purpose of the Sixth Amendment is:

> "[T]o prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of the accused to defend himself."

Mr. Justice Powell recently said in *Barker v. Wingo,* 11 Cr. L. 3174, 3175-3176 (1972):

"The right to a speedy trial is generically different from the other rights enshrined in the Constitution for the protection of the accused.

\* \* \*

"\* \* \* [U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself."

The right to a speedy trial is relative, and the time within which the trial must be had depends on the facts and circumstances of each particular case. *Barker v. Wingo, supra; State v. Lawless,* 13 Md. App. 220, 227, 283 A. 2d 160 (1971); *Stevenson v. State,* 4 Md. App. 1, 10-11, 241 A. 2d 174 (1967). The facts and circumstances in each particular case should be viewed in the light of four factors: (1) The length of the delay, (2) The reason for the delay, (3) Prejudice to the accused, and (4) Waiver by the accused. *State v. Lawless, supra; Caesar v. State,* 10 Md. App. 40, 42, 267 A. 2d 750 (1970); *Barnett v. State,* 8 Md. App. 35, 39, 257 A. 2d 466 (1969); *Graham v. State,* 6 Md. App. 458, 461, 251 A. 2d 616 (1969); *Frazier v. State,* 5 Md. App. 88, 92, 245 A. 2d 614 (1968); *Hall v. State,* 3 Md. App. 680, 685-686, 240 A. 2d 630 (1968).

In a sesquipedalian opinion, *State v. Lawless, supra,* Judge Moylan characterized the first, second and third factors set forth above as "The Delay—Reason—Prejudice Complex." It is that "complex" that we consider in the instant case because waiver, the fourth factor, is not applicable here.

The Supreme Court said in *United States v. Marion,* 404 U. S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971):

"Arrest is a public act that may seriously interfere with the defendant's liberty, whether he

is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends. These considerations were substantial underpinnings for the decision in *Klopfer v. North Carolina,* [386 U. S. 213, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967)]; see also *Smith v. Hooey,* 393 U. S. 374, 377-378, 89 S. Ct. 575, 576-577, 21 L.Ed.2d 607 (1969). So viewed, it is readily understandable that *it is either a formal indictment or information or else the actual restraints imposed by arrest* and holding to answer a criminal charge that engages the particular protections of speedy-trial provisions of the Sixth Amendment.

Invocation of the speedy trial provision thus need not await indictment, information or other formal charge. \* \* \*." (Emphasis supplied).

Thus it is patent that in order to calculate a constitutionally proscribed delay in bringing a matter to trial, we must look back to the date of the commencement of a prosecution by way of arrest, warrant, information or indictment, whichever shall first occur, and then forward to the date of the trial or hearing. We have previously held that the measure for determining a speedy trial began by way of "warrant, information or indictment," *State v. Lawless, supra.* We now, in the light of *United States v. Marion, supra,* modify our earlier holdings. See also *State v. Hamilton,* 14 Md. App. 582, 287 A. 2d 791 (1972). In the instant case, we do not perceive the delay to be of constitutional dimension.

Chapter 212, Acts of 1971, now codified as Art. 27, § 591, says in pertinent part:

"(a) Within two weeks after the arraignment of a person accused \* \* \*, or within two weeks after the filing of an appearance of counsel \* \* \* for an accused in any criminal mat-

ter, whichever shall occur first, a judge or other designated official [of the court] in which the matter is pending, shall set a date for the trial of the case, which date shall not be later than six months from the date of the arraignment * * *, or the appearance * * * of counsel for the accused, whichever occurs first. The date established * * * shall not be postponed except for extraordinary cause shown * * * and only with the permission of the administrative judge * * *."

The Court of Appeals of Maryland was authorized to establish rules to implement the statute. Rule 740 of the Maryland Rules was adopted June 1, 1972, and provides:

"The date of trial and postponements shall be governed by Code, Article 27, section 591."

There is nothing in the record in this case to indicate that appellee's counsel relied upon the provisions of Art. 27, § 591, nor do we have the advantage of knowing whether, *vel non*, counsel included the same in a memorandum submitted to the trial judge.[3] Even if we assume that counsel urged the above quoted statutory provision upon the trial court, or that the judge relied upon it, we, nevertheless, interpret the Act as being directory, and not mandatory. It provides a declaration of legislative policy, but is dehors sanctions.[4]

We said in *Young v. State*, 15 Md. App. 707, 710, 292 A. 2d 137 (1972) :[5]

---

3. The memorandum was not made part of the record.

4. The American Bar Association's Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 1.1 (App. draft 1968) makes no attempt to set a specific time limit for a case to come to trial in terms of days or months but recommends that each jurisdiction adopt such a measuring stick. The effect of the A.B.A. recommendation is that if a case is not brought to trial within the specific time limit that the matter, with one exception, be dismissed. Maryland has not adopted such a rule. See *Barker v. Wingo*, 11 Cr. L. 3174.

5. *Certiorari* granted by the Court of Appeals Sept. 12, 1972, No. 177 Misc. Docket, Sept. Term, 1972; affirmed in a per curiam opinion, 266 Md. 438, 294 A. 2d 467 (1972).

"The Legislature did not explicitly provide the extreme sanction of dismissal of an indictment for administrative non-compliance. We cannot conclude that so extreme a sanction was implicit in the legislative act."

The statute was not implemented by the Court of Appeals until June 1, 1972, which is approximately 3½ months after the hearing on the motion to dismiss had occurred. Moreover, Rule 740, similarly to the statute, provides no sanctions for failure to comply with it.

In discussing "reason for delay," Justice Powell stated in *Barker, supra,* at 3179:

"* * * [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." (Footnote omitted).

On the subject of prejudice, *Barker* states:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense

witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

"* * * [I]f a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." (Footnotes omitted).[6]

In summary, Justice Powell concludes in *Barker* that:

"We regard none of the four factors identified above [length of delay, reason for delay, prejudice to the defendant, and what this Court has characterized as waiver, but *Barker* terms 'the defendant's assertion of this right'] as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (Footnote omitted).

While, as we have said, "waiver" is not actually present in the instant case, we deem it advisable to call attention to the holding in *Barker* that the Supreme Court rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right." There, the Court

---

6. *Barker* refers in footnote 35 to "statistical evidence that persons who are detained between arrest and trial are more likely to receive prison sentences than those who obtain pretrial release, although other factors bear upon this correlation. See Wald, Pretrial Detention and Ultimate Freedom: A Statistical Study, 39 N.Y.U.L. Rev. 631 (1964)."

said that the "* * * better rule is the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered * * *."

Our review of the transcript indicates that one of the two alleged possibilities of prejudice to the appellee is that he had momentarily lost contact with a friend because she is believed to have moved from the place where she resided at the time of appellee's arrest. In response to a question by the trial judge, counsel stated, "I won't say [the witnesses] are lost, but * * * I can't reach them without at least [appellee's] assistance." [7] In his testimony, the appellee admitted that he knew where the young woman worked, the name of her sister and grandmother, and other factors which we think could readily lead to the discovery of the witness's whereabouts without a great deal of trouble or difficulty.[8]

The other claim of prejudice is that the appellee did not know where to find a witness styled "Jesse." He averred that he had known Jesse for approximately four months before appellee's arrest, did not know Jesse's last name or where he worked or lived. He stated, however, that he felt that he could find Jesse on "the Avenue."

Weighing the four factors to be considered under the Supreme Court's mandate in Barker, supra, and our decisions in Lawless and Hamilton, supra, we conclude from our independent constitutional review of the record, (a) the delay of approximately 5½ months between the date of arrest and the date of the hearing is not, under the circumstances of this case, of constitutional dimension; (b) the reason for the delay is no more than "neutral" and (c) the prejudice to the appellee—if it be

7. Compare this with appellee's apparent willingness to remain in jail. See N. 2. supra.

8. Appellee testified as to the name and address of another person who "knows where" the young woman lived. Appellee said he did not give this information to his attorney. He also admitted not giving to his attorney the young woman's place of employment because he "just didn't think about it at that time." Appellee further testified that the young woman, represented to be an alibi witness, visited him in the City Jail shortly after his arrest. She also had spoken to the appellee's attorney.

prejudice at all—concerning his witnesses was at most minimal. None of the "Delay-Reason-Prejudice" factors, individually or in the aggregate, require a dismissal of the indictment.

> *Order dismissing indictment reversed and case remanded for further proceedings.*
>
> *Costs to be paid by appellee. Mandate to issue forthwith.*