# JERRY WAYNE DANIELS *v.* STATE OF MARYLAND

[No. 571, September Term, 1975.]

*Decided March 2, 1976.*

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*John W. Sause, Jr., District Public Defender*, with whom was *Alan H. Murrell, Public Defender* on the brief, for appellant.

* Note: *Certiorari* denied, Court of Appeals of Maryland, June 3, 1976.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County* and *Paul S. Podolak, Assistant State's Attorney for Cecil County* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

Appellant was convicted, of possession and distribution of narcotics, by a jury in the Circuit Court for Cecil County. Immediately before his trial on February 11, 1975, he moved to dismiss the indictments on the ground that he had been denied a speedy trial. The judge deferred ruling on the motion until after the trial.

Soon after the jury's verdict was returned, a hearing was held on the motion. After substantial evidence was presented on the speedy trial issue, the judge denied appellant's motion in a written opinion expressly setting forth his findings of fact.[1] Because our review of the record

---

1. That portion setting forth the findings of fact is as follows:
"FINDINGS OF FACT
From the evidence, the Court makes the following findings of fact.

1. The alleged crimes were completed June 15, 1973. The defendant was indicted January 16, 1974. From indictment until July 1, 1974 and from December 1, 1974 until January 8, 1975 the police did all that could be expected and was reasonably needed to attempt to apprehend the defendant. Escalation of the search process by alerting the F.B.I. or the M.I.L.E.S. computer was not needed and would have served no purpose in this case because the defendant admits, save for ten days, he never left the two county, Cecil-Harford, area. State Police Barracks in both Counties, the Cecil County Sheriff, and possibly other local police agencies including, we know, Perryville, Port Deposit and Bainbridge, were alerted. The defendant was arrested January 8, 1975, arraigned January 13, 1975 and tried February 11, 1975.

2. The police recorded no activity by way of efforts to locate the defendant for the five month period from July 1, 1974 to December 1, 1974.

3. The police did not know that the defendant's mother lived at 40 Robin Hood Road, Havre de Grace, Maryland until Macken went there on January 8, 1975 as a result of examining the marriage license.

4. The police did not know the location of the defendant.

5. In the nineteen month period during which he was sought the defendant lived in five different places and held eight different jobs.

6. The existence of two law violating Jerry Daniels of strikingly similar physical characteristics did not make any easier the policemen's task of locating the right Jerry Daniels.

7. The defendant possessed and distributed to Trooper Macken crystal methamphetamine at the White Horse Tavern on June 9, 1973 and June 15,

has revealed sufficient evidence to support his factual conclusions, our opinion will be based upon the facts as he found them.

The essence of the complaint was that although appellant had been charged with a crime he was not arrested, notified or tried for over sixteen months. The significant dates are as follows:

| | | |
|---|---|---|
| 1. | Narcotics sold to undercover officer | June 9, 1973 |
| | | June 15, 1973 |
| 2. | Warrant taken out by officer (appellant first becomes an "accused") | September 27, 1973 |
| 3. | Appellant indicted | January 16, 1974 |
| 4. | Appellant arrested (and received his first knowledge of the pending charge) | January 8, 1975 |
| 5. | Appellant arraigned | January 13, 1975 |
| 6. | Appellant tried and convicted. | February 11, 1975 |

### The Length of Delay

Appellant first became an accused by the execution of a warrant for his arrest on September 27, 1973.[2] Thus, the

---

1973. Macken's identification was positive and a challenge thereto at the trial was withdrawn by the defendant.

8. The defendant made no effort to locate Langhorne and a minimal effort to locate Arsh, the two witnesses he would depend upon for alibi.

9. There has been no proffer that these potential alibi witnesses would give any evidence whatever relevant to the case.

10. There has been no proffer that any records lost in the ransacking of the apartment would have been of any help to the defendant. He testified affirmatively that there would not have been any records of dates or hours worked or pay slips because none were kept."

2. The trial judge held that the beginning of the period of delay was appellant's indictment. The State concedes that the beginning point was when appellant was subject to arrest by virtue of the warrant, which was the first charging document, executed by the trooper on September 27, 1973.

In State v. Hunter, 16 Md. App. 306, 311 we have held that speedy trial rights are calculated from

"... the date of the commencement of a prosecution by way of

length of the delay before trial was sixteen and one-half months. That length of time is of sufficient "constitutional dimension" to require that we analyze the delay by utilizing the "balancing test" mandated by *Barker v. Wingo*, 407 U. S. 514, 530; *Epps v. State*, 276 Md. 96, 111; *State v. Jones*, 18 Md. App. 11, 22-23.

## Reasons for Delay

The appellant contends that the State should be charged with the full period of delay between warrant and arrest because insufficient effort was expended in the search for and arrest of appellant. The search conducted by the police was certainly something less than a "manhunt." However, according to the testimony of a police officer, customary interdepartmental procedures were followed and physical efforts were made as time permitted. Little was known of appellant's customary hangouts and efforts to find him were limited because, according to one officer's testimony, the search for appellant was not of high priority. The police efforts to apprehend appellant were casual at best and clumsy at worst.[3] Appellant's arrest on January 8, 1975 was almost inadvertent. The State's Attorney described the circumstances:

> "During approximately the last week of December of '74 I went on vacation right around Christmas/time for a 2 week period. When I was home I got a hold of the Cecil Whig and I saw a marriage license between a Jerry Daniels. I didn't do anything about it. Then when I came back into

---

arrest, warrant, information or indictment, *whichever shall first occur*, and then forward to the date of the trial or hearing."

In State v. Hamilton, 14 Md. App. 582, we noted that our analysis in State v. Lawless, 13 Md. App. 220, 229-230 of the point at which the right to a speedy trial attaches had preceded the Supreme Court's later decision in United States v. Marion, 404 U. S. 307. *Hunter* followed, making it clear that however other states may read *Marion*, our position is unequivocal.

**3.** A bench warrant was served on another person with the same name held by the police on another offense. Appellant himself was once arrested for suspicion of another offense and released without being served or notified of the narcotics' charge.

my office sometime after the first of the year there was also a copy of a disorderly conduct warrant, if I remember correctly, with a Jerry Wayne Daniels. I called Trooper Macken as a result of these discoveries and I said 'This may or may not be your boy'. That may not be the exact words I used, but in essence that is what I was saying. Trooper Macken came up and he got the new address. If I remember correctly, there was an address — if there was an address on the warrant — and I don't recall whether there was a complete address in the newspaper or not, but I believe he went downstairs and got a complete address off the marriage application."

The trial judge attempted to identify the periods of time when the police "did all that could be expected and was reasonably needed to attempt to apprehend" the accused. He also tried to determine how much of the police department's neglect was excusable. We think it beyond the scope of our judicial vision to judge the adequacy of the time and effort expended by the police in quest of appellant. That appellant was not intentionally eluding the police is obvious since he did not know he was being sought. On the other hand, his nomadic life style (eight jobs at different geographic locations and five residences during the period of delay) helps to explain, if not excuse, their failure to apprehend him.

It would be impossible for us to prescribe a minimum standard of diligence for the police in seeking out an accused. Too many intangible factors affect the amount of effort which can and should be expended, e.g., the degree of crime, the danger the fugitive poses to society, work load of the law enforcement agency, etc. Furthermore, any attempt to do so may undermine police investigations (as well as equivocate an accused's rights) by putting pressure on the State to arrest a suspect while his whereabouts are known, rather than after their investigation is thoroughly completed, for fear that post indictment efforts to apprehend him may fall short of some judicially mandated

standard. The language of the Supreme Court in *Hoffa v. U.S.*, 385 U. S. 293, 310 is particularly pertinent:

> "There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

The Sixth Amendment guidelines are those Judge Moylar discussed in *State v. Jones, supra*, 18 Md. App. at 24:

> "There was in the case at bar clearly no 'purposeful or oppressive' delay, motivated by 'bad faith' or representing 'a deliberate choice for a supposed advantage.' In terms of assessing 'fault,' the behavior of the State clearly did not fall under the interdict of 'purposefulness' or 'oppressiveness'.
>
> Nor was there any persistent refusal to move forward in the face of repeated demands, requests and efforts by an accused to bring the case on for trial. The situation at bar was not such that the attitude of the State could be described as 'capricious,' 'arbitrary' or 'unreasonable' — the sort of motivational attitude we deplored in *Caesar v. State*, 10 Md. App. 40, 49-50, 267 A. 2d 750.
>
> *The case at bar presents us not with an instance of deliberate, knowing inaction but rather with an instance of what might, at the very worst, be characterized as 'inadvertent inaction' or as 'halting and less-than-diligent action'. Lawless*, at 237-241. Fault, if any, was minimal or for what *Barker* referred to as a 'more neutral reason'." (Emphasis added).

In the case before us it is by no means certain that the lack of a more vigorous search by police caused the full period of delay. The court below assessed five months against the State after analyzing their efforts to apprehend appellant. We eschew such analysis because of the aforementioned precedential danger inherent in deciding what degree of diligence is necessary to avoid blame. Moreover, for purposes of this appeal, we need not do so, for even if we assumed the *entire* period to have been a "more neutral reason," the total lack of any prejudice to appellant caused by the delay precludes a dismissal for lack of a speedy trial.

### Assertion of the Right

"This factor, in the equation at bar, is zero. The [appellant] did not know of the charges against him and was, therefore, in no position to make demand. His silence, under the circumstances, cannot redound to his detriment. Conversely, the State cannot be charged with indifference or inaction in the face of repeated demands for action, since such demands, understandably, were never made. The demand factor is neither a plus nor a minus for either party." *State v. Jones*, 18 Md. App. at 26-27.

### Prejudice

Obviously, if an accused did not know that he was an accused, two of the three "interests of defendants which the speedy trial was sought to protect," *Barker v. Wingo*, 407 U. S. at 532, are not adversely affected. As pointed out in *Smith v. State*, 276 Md. 521, one such interest is to avoid oppressive pretrial incarceration. Since appellant was not arrested until thirty-four days before he was tried, that "interest" does not pertain to the facts of this case.

Secondly:

"The speedy trial right was also intended to minimize the anxiety of the accused, his family and friends, and to protect the accused from public scorn, financial ruin and having to curtail his

speech and associations." *Smith v. State,* 276 Md. at 533.

Considerations of this nature were described in *Moore v. Arizona,* 414 U. S. 25, 26-27:

" . . . [P]rejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay,

'wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' United States v. Marion, 404 U. S. 307, 320, [30 L.Ed.2d 468, 92 S. Ct. 455] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.' Barker v. Wingo, supra, at 537, 33 L. Ed. 2d 101 (White J., concurring)." (footnote omitted).

No prejudice of this nature occurred, obviously because what appellant didn't know could hardly have hurt him. None of appellant's family members who testified knew of the outstanding charge and appellant himself admitted he did not:

"Q And at no time up until January 8 of '75 were you ever notified by the authorities concerning these charges that stem from the incidents that occurred in June of '73?
A No, sir. I wasn't.

BY THE COURT:

Q The first arrest you talked about was May of '73, am I correct?

A Yes, sir."

The final "interest" to be protected is the one appellant hopes to utilize:

"Lastly, the *Barker* Court said that the speedy trial right was intended 'to limit the possibility that the defense will be impaired [by delay],' which interest the Court termed 'the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Smith v. State*, 276 Md. at 533, citing 407 U. S. at 532.

Appellant contends that, due to the lapse of time, employers, associates and friends whom he "hung around with" and who might have been able to prove that he was not at the "White Horse Inn" when the two sales of narcotics took place, had either disappeared or could not recall the events of those two days.

"Q Mr. Cole referred to your defense in this case as that you didn't sell anything, you are positive that you didn't sell anything. But you have no way of proving whether or not you were there on that night, do you?

A No, sir. I can't.

Q I mean if you could have proven with Mr. Langhorne if he was around there is a possibility that you might have been able to prove — or Mr. Arsh — that you weren't even in the White Horse on the 9th and the 15th.

A Yes, sir.

Q You didn't always go to the White Horse every Friday and Saturday night, did you?

A No, sir. I did not."

Appellant admitted to having frequented the "White Horse Inn", but was not certain if he was present on the two days

in question. Appellant does not claim that he had an alibi which could not be proven because of a lost witness, as in *Epps v. State,* 276 Md. 96. Rather he argues that he can't remember if he might have had an alibi, but even if he did he couldn't prove it at his trial because he had lost contact with his acquaintances. This bootstrap argument does not convince us that the claim of a lost defense is anything more than the assertion of the possibility of dimmed memories. In the factually analogous case of *State v. Jones, supra,* 18 Md. App. at 30, Judge Moylan discussed a similar assertion of prejudice:

> "The unusual posture of the [appellant] at bar, in not having known that a case had been instituted against him, makes his predicament more akin to that of those who claim due process violations where long delays are involved before the initial institution of prosecution, rather than to those in more typical speedy trial situations. *United States v. Marion* addressed itself to the claim of faded memory[4] and gave it short shrift, so long as the applicable statute of limitations was not offended. . . ."

Because appellant has raised due process as an alternative issue, we find it appropriate to repeat the Supreme Court's response to that question in full here. *Marion* meets this very issue and points out that each case must be decided on its own circumstances:

> "Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. Cf. Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d

---

4. Footnote 10 in *Jones* points out that the delay in *Marion* was 38 months.

215, 83 S. Ct. 1194 (1963); Napue v. Illinois, 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959). However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from preaccusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances in each case. It would be unwise at this juncture to attempt to forecast our decision in such cases." (Footnotes omitted). *United States v. Marion,* 404 U. S. at 324-325.

## Result

While it is lamentable, and indeed frightening, that law enforcement in this instance was unable or unwilling to exercise greater diligence, we find, after balancing the *Barker v. Wingo* factors, as set forth above, that appellant was not denied a speedy trial. "We are to keep the balance true," [5] and the only purpose to be served by holding otherwise would be to chastise the law officers for ineptitude. Appellant has not been harmed by the delay of his trial. To dismiss with prejudice when there is no prejudice is an unwarranted denial of society's right to bring an accused transgressor before the bar of justice.

We hasten to note that our holding is not so rigid as to preclude an accused from ever showing actual prejudice from delay sufficient to warrant dismissal. It would seem, however, that any delay between formal accusation and apprehension, arrest or notification of the charge, must be accompanied by a showing of actual prejudice to compel a

---

5. Snyder v. Massachusetts, 291 U. S. 97.

dismissal. The presumption of prejudice following even a period of "substantial delay," *e.g., Jones,* 18 Md. App. at 27-29, will not suffice.

*Judgments affirmed.*