# WALLACE EVANS *v.* STATE OF MARYLAND

[No. 564, September Term, 1975.]

*Decided March 1, 1976.*

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*Raymond M. Faby, Assigned Public Defender,* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Francis Sauer, Assistant State's Attorney for Baltimore City* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The Supreme Court, in *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), articulated four factors to be employed by the courts in determining whether an accused had been denied his Sixth Amendment right to a speedy trial.[1] The four elements that *Barker* requires us to weigh [2] are: (1) the delay, (2) the reason for the delay, (3) prejudice, and (4) waiver. The Court of Appeals in *Epps v. State,* 276 Md. 96, 345 A. 2d 62 (1975); *Smith v. State,* 276 Md. 521, 350 A. 2d 628 (1976); and *Erbe v. State,* 276 Md. 541, 350 A. 2d 640 (1976), has indicated the direction we are to follow in performing the delicate balancing mandated by *Barker.*

Applying *Barker, Epps, Erbe,* and *Smith* to the facts presented to us in the case at bar, we are led to conclude that we must reverse the judgment of the Criminal Court of Baltimore. We hereafter state our reasons.

According to the State's evidence, Wallace Evans sold three bags of heroin to an undercover police officer, Detective John Hailey, on March 23, 1973. The total price was purportedly $32.50.[3] Because he was working undercover and there was an ongoing investigation, no arrest was made of the appellant, Evans, until a few days after a warrant was issued on July 30, 1973. It is important

---

1. A similar right is found in the Maryland Constitution, Declaration of Rights article 21.

2. The Sixth Amendment was held to be applicable to state trials through the vehicle of the Fourteenth Amendment: Klopfer v. North Carolina, 386 U. S. 213, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967); Smith v. State, 276 Md. 521, 350 A. 2d 628 (1976).

3. An issue was made at trial over the alleged price. The appellant contended that the supposed price was absurd because sellers of heroin or other proscribed drugs do not engage in giving discount prices for small quantity purchases. He implied that a unit price of $10.83 or $10.84 is completely unbelievable.

to keep that date, July 30, 1973, firmly in mind as it is the date from which we must calculate in order to determine whether the defendant has been denied his right to a speedy trial. *United States v. Marion,* 404 U. S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971); *State v. Jones,* 18 Md. App. 11, 305 A. 2d 177 (1973); *State v. Hunter,* 16 Md. App. 306, 295 A. 2d 779 (1972); *State v. Hamilton,* 14 Md. App. 582, 287 A. 2d 791 (1972). We must, as we said in *Hunter,* 16 Md. App. at 311, " . . . look back to the date of the commencement of a prosecution by way of arrest, warrant, information or indictment, whichever shall first occur, and then forward to the date of the trial or hearing." Appellant Evans is one of three brothers, triplets, and that multiple birth phenomenon produced some unusual circumstances in the case, not, however, directed toward the speedy trial question.[4] On August 9, 1973, appellant appeared in the Federal Building and asked if there was a warrant for his arrest. He was identified by Hailey and arrested by other detectives. The case was set for hearing in the District Court of Maryland on August 24, 1973. No police officer was present. The case was reset for September 24, 1973, and again no officer was present so that the matter was postponed a second time. Again, on October 25, 1973, the case was postponed for the same reason as previous postponements. On December 6, 1973, the case was postponed because neither defense counsel nor a police officer was present. One month later, January 7, 1974, the police officer was again not present. The case was postponed for the fifth time. Finally, on January 17, 1974, the officer not being present for the sixth time, the District Court judge dismissed the matter, we infer, for lack of prosecution. Thus 5$\frac{1}{2}$ months were expended in

---

**4.** Another detective was assigned to undercover work along with Hailey. The second detective occupied a different motor vehicle from Hailey, but he kept Hailey under constant observation. He testified that he recognized appellant, in the courtroom, from his observation of appellant in the car with Hailey. A few days after the warrant was issued for appellant's arrest, the detective executed the warrant. He arrested one of the appellant's brothers over the strenuous protest of the brother. The detective was under the impression that he was arresting the appellant. The brother was subsequently released when Hailey advised the detective that the wrong man had been arrested.

awaiting a preliminary hearing. The State, however, took the matter to the grand jury by whom the appellant was indicted on January 24, 1974, for distribution of heroin.

No reason is stated in the record or the briefs for the failure of the police to appear at any of the six scheduled preliminary hearings. We are unable to fathom the seeming cavalier attitude of the prosecuting police officers, unless they believed their appearance and testimony would in some way either weaken the State's case or strengthen that of the accused.

Although the docket entries of the Criminal Court do not reflect a postponement of trial on May 8, 1974, we are informed that the case was so postponed. On June 14, 1974, the appellant, who receives a pension for a service connected physical disability, requested a pre-trial medical examination. The trial, rescheduled for June 20, 1974, was postponed on that date. We glean the reason to be that the pre-trial medical report had not, as of that time, been filed. On the June 20, 1974 date, the case was specifically set for trial on "18 September, 1974 in Part VI." The medical report was filed July 5, 1974. No docket entry reflects that the case was called to trial on September 18, 1974, but it does indicate that it was called on September 11, 1974, and postponed. We are advised that it was postponed by the State. On October 29, 1974, it was again postponed with the notation, "Could not be reached." On January 22, 1975, it was continued until the next day, January 23, 1975, when trial was finally commenced, seven days short of eighteen months after the issuance of the warrant.

It appears that when the pre-trial medical report was requested appellant was required by the judge to waive, specifically, his speedy trial right. We interpret that waiver as being limited to the time between the request for the report, June 14, 1974, and the receipt by the court of the report, July 5, 1974. In any event, we do not believe appellant, in exchange for the pre-trial medical examination and report, was engaged in trading his Sixth Amendment right to a speedy trial for all purposes of this case.

## The Delay

As we have seen, the delay between the issuance of the warrant and the commencement of the trial was but seven days less than eighteen months. We think such a delay to be of constitutional proportion. *Smith v. State, supra.* Having crossed the threshold of constitutional proportion, we now advance to the completion of the *Barker* balancing equation.

## The Reasons for the Delay

We have set forth, above, the reasons for the delay as we are able to deduce them from the record or as they have been explained by counsel in briefs and on oral argument. We have set forth below a table depicting the delay involved in this case and indicating whom we think chargeable with that delay.

| Date | Nature of Proceeding | Reason for Delay | Delay Period | Party Chargeable |
|---|---|---|---|---|
| July 30, 1973 to Aug. 9, 1973 | Issuance of warrant and arrest | Administrative | 10 days | State |
| Aug. 10, 1973 to Aug. 24, 1973 | Arrest to preliminary hearing | Procedural | 15 days | State |
| Aug. 25, 1973 to Sept. 24, 1973 | Preliminary hearing postponed | No police officer present | 1 month | State |
| Sept. 25, 1973 to Oct. 25, 1973 | Preliminary hearing postponed | No police officer present | 1 month | State |
| Oct. 26, 1973 to Dec. 6, 1973 | Preliminary hearing postponed | No police officer present | 1¹/₂ months | State |
| Dec. 7, 1973 to Jan. 7, 1973 | Preliminary hearing postponed | Neither police officer nor defense counsel present | 1 month | Neutral |

| Date | Nature of Proceeding | Reason for Delay | Delay Period | Party Chargeable |
|---|---|---|---|---|
| Jan. 8, 1974 to Jan. 17, 1974 | Preliminary hearing postponed to Preliminary hearing. Dismissed — lack of prosecution | No police officer present | 10 days | State |
| Jan. 17, 1974 to May 8, 1974 | Dismissal to indict-ment and trial sched-uled | Administrative | 3³/₄ months | State |
| May 9, 1974 to July 5, 1974 | Trial date postponed to pre-trial medical report | Part of the reason not shown in the record—Med. Exam. report filed | 2 months | Appellant |
| July 6, 1974 to Sept. 11, 1974 | Medical Re-port to trial date postponed | Administrative | .2 months | State |
| Sept. 12, 1974 to Oct. 29, 1974 | Trial date postponed to trial date postponed | Implicitly no court available | 1¹/₂ months | State |
| Oct. 30, 1974 to Jan. 22, 1975 | Trial date postponed to trial date | "Not reached" Administrative | 3 months | State |

### Recapitulation

Total elapsed time: Approximately 18 months.
Total time chargeable to appellant: Approximately 2 months.
Total time chargeable to State: Approximately 15 months.
Neutral time chargeable to neither party: 1 month.

Weighing the cause and duration of the delay on the scale of *Barker*, it is readily apparent that the State is chargeable with delay in a ratio seven and a half times that chargeable to the appellant.

### Prejudice to the Accused

*Moore v. Arizona*, 414 U. S. 25, 94 S. Ct. 188, 38 L.Ed.2d 183 (1973) laid to rest any belief that an accused must affirmatively demonstrate prejudice in order to avail himself of *Barker*'s third factor. The Court said:

".... [P]rejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay,

'wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends." *United States v. Marion*, 404 U. S. 307, 320[, 92 S. Ct. 455, 30 L.Ed.2d 468] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.' *Barker v. Wingo, supra*, at 537 (White, J., concurring)." 414 U. S. at 26-27 (footnote omitted).

*See also Epps v. State, supra.*

A defendant's being released on bail, as was the appellant in the case now before us, *Epps* points out, is " . . . a significant consideration in determining a lack of prejudice and in holding that there has been no denial of a speedy trial." 276 Md. at 119.

Except for approximately 60 days, appellant was free on bail. With respect, however, to prejudice, the appellant asserted " . . . emotional pressure, mental stress and strain and anguish and things of that nature which have taxed his mind to a point where he has been burdened. . . ."

The Court of Appeals, in *Smith v. State, supra,* notes that, "The speedy trial right was also intended to minimize the anxiety of the accused, his family and friends, and to protect the accused from public scorn, financial ruin and having to curtail his speech and associations." 276 Md. at 533. It is, of course, not necessary that an accused be incarcerated in order to be denied his right to a speedy trial. Incarceration, conceivably, might hinder the preparation of the defense more than it would damage the defense if the accused were released on bail or on his own recognizance while awaiting trial, but that is only an element for the courts to weigh in their "ad hoc" approach to each case. *Barker v. Wingo, supra.*

### Waiver

Appellant made no demand for a speedy trial until the date of trial, January 23, 1975, when he filed two motions: (1) a demand for a speedy trial and (2) a motion to dismiss for lack of a speedy trial. After hearing a recitation of the facts to which we have heretofore alluded above, the trial judge denied the motion to dismiss for lack of a speedy trial, commenting briefly that he was " . . . convinced there is no ground on which . . . [he could] grant the [m]otion. . . ."

*Barker,* as Judge Moylan wrote for this Court in *State v. Jones, supra,* established that the failure to demand a speedy trial does not, *ipso facto,* amount to a waiver of that fundamental right. Instead, failure to demand is relegated to the status of another " . . . factor to be considered in

interaction with the three others. . . ." 18 Md. App. at 18. Judge Moylan pointed out, 18 Md. App. at 18, that Mr. Justice Powell penned, in *Barker,* that the " . . . failure to assert the right [demand for a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U. S. at 532. Difficult, however, is not synonymous with impossible. Moreover, "[a] defendant has no duty to bring himself to trial; the State has that duty. . . ." *Epps,* 276 Md. at 105.

At the outset, we indicated that appellant was denied his Sixth Amendment right to a speedy trial. We have explained the factors constituting the "in-put" upon which we rest that conclusion. On balance, in this case, the appellant's failure to demand a speedy trial prior to the date of trial, while weighing against him, does not outweigh what appears to be an air of indifference with respect to the prosecution of this case from its inception.

While we recognize that in large metropolitan areas practical problems arise with respect to the expeditious trial of criminal cases, the constitutional right to a speedy trial may not be shelved because of court congestion.

We think the ends of justice are best served, not only for this accused, but for the general public, by our insistence upon the State's observance of the speedy trial right of a defendant, which right has been guaranteed by both the United States Constitution and the Maryland Declaration of Rights, article 21. The failure of the State, in the case *sub judice,* to afford the appellant that right requires us to impose the only sanction available when a speedy trial has been denied, reversal.

*Judgment reversed.*
*Costs to be paid by Mayor and*
*City Council of Baltimore.*