519 A.2d 751

Edward A. JACKSON

v.

STATE of Maryland.

No. 429, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Jan. 9, 1987.

W. Michel Pierson, Assigned Public Defender (Alan H. Murrell, Public Defender on brief), Baltimore, for appellant.

John S. Bainbridge, Jr., Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Marshall H. Feldman, Asst. State's Atty. for Baltimore City on brief), Baltimore, for appellee.

Argued Before ALPERT, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

Appellant, Edward A. Jackson, was convicted by a jury in the Circuit Court for Baltimore City of first degree rape, first degree sexual offense, and assault with intent to murder. In an unreported per curiam opinion, we reversed those convictions and remanded the case for retrial. *Jackson v. State*, No. 1001, September Term, 1983 (filed April 27, 1984). The State petitioned for a writ of *certiorari* but on October 2, 1984, the Court of Appeals denied the petition. *State v. Jackson*, 301 Md. 43, 481 A.2d 802 (1984). Some twenty months after our mandate, Jackson was retried and again convicted by a jury of the same offenses, together with a fourth offense, carrying a deadly weapon, as to which no judgment had been entered at the conclusion of the first trial. The court imposed a life sentence for the rape and concurrent lesser sentences for the other offenses.

The principal issue raised by this appeal is whether appellant's constitutional right to a speedy trial was abridged by the lengthy delay in retrying him. Appellant also asserts that the trial court erred in refusing to grant certain jury instructions he requested and that retrial on the weapon charge was barred by the constitutional prohibition against double jeopardy. We reject appellant's speedy trial contention and his assertions of error in the instructions. With respect to his double jeopardy argument, we find that the issue has not been preserved for appellate review.

*Background*

Despite our mandate and the denial of *certiorari* by the Court of Appeals, for some unexplained reason, Jackson's case was permitted to languish until 18 December 1985, when it appeared on the circuit court's arraignment docket. Jackson moved for dismissal of the indictments, asserting a denial of his constitutional right to a speedy trial; that motion was dismissed. Trial was held on 29 January 1986 and Jackson was again convicted by a jury.

The court sentenced Jackson to concurrent terms of life imprisonment (rape), twenty-five years (assault with intent to murder), thirty years (sexual offense), and three years (carrying a deadly weapon). The first three sentences were imposed under article 27, section 643B(c), thus rendering Jackson ineligible for parole for twenty-five years.

*Speedy Trial*

■ As Judge Moylan stated for this Court in *State v. Wilson*, 35 Md.App. 111, 371 A.2d 140 (1977): "It is axiomatic, from all of the massive case law upon the subject, that the mere running of the calendar will not be viewed in isolation and has little significance divorced from the questions of reason for delay and prejudice, which are, respectively, its cause and its effect." *Id.* at 117, 371 A.2d 140. Because there is no constitutional right to be tried within a specific period of time, the determination of whether a defendant has been denied a speedy trial necessarily is made on a case by case basis. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972); *Epps v. State*, 276 Md. 96, 345 A.2d 62 (1975). Although an *ad hoc* approach is required, we are not without guidance as to the methodology to be employed in assessing a claimed deprivation of a speedy trial. The Supreme Court, in *Barker v. Wingo, supra,* provided the conceptual framework necessary to arrive at a consistent and principled application of the Sixth Amendment's guarantee: a four-factor balancing test. Those four factors are:

1. Length of delay,

2. Reason for delay,

3. Defendant's assertion of his right,

4. Prejudice to the defendant.[1]

The balancing of the four factors is required only when the length of the delay is of a constitutional dimension. *Powell v. State,* 56 Md.App. 351, 358, 467 A.2d 1052 (1983), *cert. denied,* 298 Md. 540, 471 A.2d 745 (1984). Due to the unusual nature of this appeal—a claimed denial of a speedy retrial—the speedy trial clock is not triggered by the arrest of Jackson or the filing of formal charges. *Cf. State v. Gee,* 298 Md. 565, 567–72, 471 A.2d 712, *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). The triggering event in this appeal is the issuance of our mandate on 28 May 1984 which reversed Jackson's first conviction. *Coleman v. State,* 49 Md.App. 210, 220, 431 A.2d 696 (1981); *Tisdale v. State,* 41 Md.App. 149, 160, 396 A.2d 289 (1979). Since the State concedes, perforce, that the twenty month delay between 28 May 1984 and 29 January 1986 is of a constitutional dimension, we advance to consideration of the four factors. *Barker v. Wingo, supra,* [407 U.S.] at 533, 92 S.Ct. at 2193.

## 1. Length of Delay

As mentioned above, the length of delay is twenty months.

## 2. Reason for the Delay

The Supreme Court has recognized that degrees of fault should be associated with various causes of delay in bring-

---

1. Four years prior to *Barker v. Wingo,* this Court first employed a four-factor analysis. *See Hall v. State,* 3 Md.App. 680, 685–86, 240 A.2d 630 (1968). The decision in *Barker v. Wingo* modified the Maryland approach insomuch as Maryland viewed the third factor—defendant's assertion of his right—in terms of waiver; if the defendant did not demand a speedy trial, he was deemed to have waived the right absent a showing of actual prejudice. *See Fabian v. State,* 3 Md.App. 270, 286, 239 A.2d 100 (1968). As recognized by this Court in *State v. Jones,* 18 Md.App. 11, 16–18, 305 A.2d 177 (1973), this so-called "demand-waiver" rule was rejected by the Supreme Court in *Barker v. Wingo.*

ing an accused to trial. In *Barker v. Wingo*, the Court stated:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531, 92 S.Ct. at 2192.

For the purpose of assessing fault we break down the twenty months at issue into three periods:

A. 29 May 1984 to 2 October 1984 (127 days)

B. 3 October 1984 to 18 December 1985 (442 days)

C. 19 December 1985 to 29 January 1986 (42 days).

### A. *29 May 1984 to 2 October 1984*

During the four months in which the State's application for *certiorari* was pending, the State chose not to retry Jackson, although it possessed the authority to do so. *See Skeens v. Paterno,* 60 Md.App. 48, 64–65, 480 A.2d 820, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984). That delay is charged to the State. We recognize, however, that it was reasonable for the State to wait until after the Court of Appeals decided not to review our reversal of Jackson's conviction before proceeding with a retrial; therefore, the four months will not be weighted heavily. *Cf. Hines v. State,* 58 Md.App. 637, 654–56, 473 A.2d 1335 (1984) (delay resulting from reasonable decision to determine whether witnesses were available before attempting to obtain custody of accused from another sovereign was chargeable to State but not given great weight).

B. *3 October 1984 to 18 December 1985*

This period encompasses the time which passed between the denial of *certiorari* by the Court of Appeals and the appearance of Jackson's name on the circuit court's arraignment docket. The State cannot explain how fourteen and one-half months were allowed to pass before Jackson was called to appear before the court. Counsel surmises that a clerical error occurred which permitted the case to fall through the cracks. This 442–day period is charged against the State.

■ Regarding the weight to be assigned this delay, *Barker v. Wingo* indicates that a delay resulting from negligence should be weighted less heavily than one resulting from a deliberate attempt to undermine the defense. *Barker v. Wingo, supra,* [407 U.S.] at 531, 92 S.Ct. at 2192. This does not mean, however, that a negligent delay cannot be weighted heavily. In *Wilson v. State,* 44 Md.App. 1, 408 A.2d 102 (1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 275 (1980), this Court stated that the degree of weight to be attributed to a delay resulting from negligence increases in direct proportion to the length of the delay. *Id.* at 10, 408 A.2d 102. That principle has since yielded to the general proposition that a delay which results from prosecutorial indifference or negligence must be weighted heavily against the State. *E.g., Ferrell v. State,* 67 Md.App. 459, 464, 508 A.2d 490 (1986); *Lee v. State,* 61 Md.App. 169, 178–79, 485 A.2d 1014, *cert. denied,* 303 Md. 115, 492 A.2d 616 (1985); *Powell v. State, supra,* [56 Md.App.] at 361, 467 A.2d 1052.

In *Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981), a delay of fourteen months was weighted heavily against the State because of what the Court dubbed "prosecutorial indifference." The State was unable to locate the defendant even though he was already incarcerated on an unrelated charge. Despite his being "right under their noses," the authorities made no attempt to inform Brady of the pending charges. *Id.* at 267, 434 A.2d 574. The Court

found the State's lack of diligence to be the determinative factor in its decision to reverse Brady's conviction. "Brady's trial was not delayed because of someone's professional judgment regarding allocation of scarce resources, but because of the inexcusable failure of the State to check for Brady's presence within the correctional system itself." *Id.* at 269–70, 434 A.2d 574.

■ We find the unexplained loss of Jackson's case within the criminal justice system to be as much a matter of "prosecutorial indifference" as the State's failure to locate Brady within the correctional system. Accordingly, the 442–day period will be weighted very heavily against the State.

### C. *19 December 1985 to 29 January 1986*

We find that the 42–day delay between Jackson's appearance before the court on 18 December 1985 and trial was allowable for orderly pretrial preparation and we charge this time to neither party. *Cf. Ferrell v. State, supra,* [67 Md.App.] at 462, 508 A.2d 490.

*Summary*

 A. 127 days charged to the State—not heavily weighted;

 B. 442 days charged to State—heavily weighted;

 C. 42 days—neutral.

### 3. Defendant's Assertion of His Right

The defendant's failure to assert his right to a speedy trial is no longer deemed a waiver of such right. *See State v. Jones,* 18 Md.App. 11, 16–18, 305 A.2d 177 (1973). The Supreme Court has recognized, however, that the failure to demand a speedy trial does make it difficult for the defendant to prove that he was deprived of his right. *Barker v. Wingo, supra,* [407 U.S.] at 531–32, 92 S.Ct. at 2192. Of course, "difficult" and "impossible" are not synonymous. *Evans v. State,* 30 Md.App. 423, 430–31, 352 A.2d 343 (1976).

■ Over the course of the twenty month delay, Jackson did not file a motion for speedy trial. On 20 January 1986, nine days before his retrial, Jackson filed a motion to dismiss predicated upon a claimed deprivation of speedy trial. When the court heard the motion on 29 January, it inquired of counsel why Jackson had remained silent for so long. Jackson's attorney, with commendable candor, explained that in light of the inability or refusal of the victim, during the first trial, to identify Jackson as her assailant and the ensuing reversal of his conviction, Jackson opted to wait quietly to see if the State would elect to retry him or dismiss the indictment.

We weigh Jackson's failure to demand a speedy trial heavily against him. *Cf. Powell v. State, supra,* [56 Md. App.] at 365–66, 467 A.2d 574.

### 4. Prejudice

■ Whenever the length of a delay is deemed to be of a constitutional dimension, a presumption arises that the defendant has been prejudiced; thus, a defendant need not make an affirmative showing of prejudice in order to prevail on a claimed deprivation of his constitutional right to speedy trial. *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (per curiam); *Jones v. State,* 279 Md. 1, 16, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977). The presumption is rebuttable and may lose its significance in light of evidence tending to negate the presumption and the weight attributed to other factors. *State v. Wilson, supra,* [35 Md.App.] at 122–25, 371 A.2d 140.

Prejudice in the context of the denial of speedy trial, whether presumed or actual, comes in two variations: (1) prejudice to the person of the defendant, and (2) prejudice to the conduct of the defense. *State v. Wilson, supra,* at 127, 37 A.2d 140. There are two facets to the former variety of prejudice: (a) oppressive pretrial incarceration and (b) anxiety and concern. Prejudice to the conduct of the defense may manifest itself through faded memories or

lost witnesses. *See Barker v. Wingo, supra,* [407 U.S.] at 532, 92 S.Ct. at 2192.

■ Although our reversal of his earlier convictions had reclothed him with the presumption of innocence, appellant was incarcerated throughout the entire twenty month period, during which time he would ordinarily be expected to have suffered anxiety and concern over his situation; yet, had he asserted his right at any time during the delay, the State would have discovered its error in the processing of Jackson's case and the matter presumably would have been resolved. Jackson deliberately chose to remain silent, and thus in jail, in the hope that the victim's failure to recognize him at the first trial and the reversal of his first conviction would prompt the State to drop the indictment against him. Jackson thus made a conscious choice to trade a lengthy period of confinement, along with its attendant anxiety, for the chance that he might not be prosecuted if he did not force the State's hand by demanding to be tried. Under these circumstances, we conclude that Jackson himself placed relatively little weight on the prejudice to his person, and we are certainly not inclined to give it any greater weight than he did.

■ The circuit court found that Jackson did not suffer significant prejudice to his defense. Appellant asserted that his defense was seriously hampered by the loss of an alibi witness. Ordinarily, the loss of a witness is the most serious form of prejudice, *see Barker v. Wingo, supra,* at 532, 92 S.Ct. at 2192. In this case, however, the prejudice was mitigated by the fact that a transcript of the witness's testimony at the first trial was available to the court. Although testimony read to the court may have less impact on the jury than testimony offered by a witness in person, it is also true that testimony read to the court is spared the possibility of being discredited by vigorous cross-examination. We cannot say that the court below was clearly erroneous in its finding that the prejudice to the defense resulting from the absence of the alibi witness was minimal.

*Cf. Hines v. State, supra,* [58 Md.App.] at 656, 473 A.2d 1335.

### The Balance

Our application of the four factors yields the following analysis:

(1) A delay of twenty months;

(2) Over fourteen and one-half months of delay weighted heavily against the State, four months charged to the State but not heavily weighted and a little over one month neutral;

(3) The failure of the accused to assert his right, weighted heavily against him;

(4) Slight prejudice to the person and minimal prejudice to the conduct of the defense.

As outlined, the factors appear at first glance to be in rough equilibrium. The resolution of Jackson's denial of speedy trial claim, therefore, is dependent upon the relative significance to be attributed to the corresponding heavily weighted factors. To which factor shall we attach greater significance—the State's totally unexplained failure to monitor Jackson's case, or Jackson's failure to assert his right? Certainly, Jackson had no obligation to expedite his trial; it is the State that has the duty to bring an accused to trial. *Epps v. State, supra,* [276 Md.] at 105, 345 A.2d 62. To hold that mere silence outweighs all other factors would be tantamount to reestablishing the demand-waiver rule rejected by the Supreme Court in *Barker v. Wingo.*

Appellant relies heavily on *Evans v. State, supra,* a prosecution for selling heroin to an undercover police officer. Approximately eighteen months elapsed between the date an arrest warrant was issued and the commencement of trial. Of that eighteen months, just under fifteen months resulted from repeated postponements at the State's behest due to administrative problems and the recurring absence of the police officer. Even though Evans did not assert his right to a speedy trial during the delay, this

Court reversed his conviction. Judge Gilbert wrote, "On balance, in this case, the appellant's failure to demand a speedy trial prior to the date of trial, while weighing against him, does not outweigh what appears to be an air of indifference with respect to the prosecution of this case from its inception." *Id.* [30 Md.App.] at 431, 352 A.2d 343.

We find the case *sub judice* to be distinguishable from *Evans* in one important respect. The delay in *Evans* resulted from positive actions by the State to postpone the trial; the accused's failure to demand a speedy trial did not cause or contribute to the delay. Even if Evans had demanded a speedy trial, the State was not in a position to accede to that demand. In this case, however, the State did not seek any postponements. There was nothing to suggest that the State had any reason or motive to delay appellant's trial. Indeed, everything pointed to sheer negligence; the State apparently just lost track of the case and forgot that appellant existed. Such being the case, had appellant requested a speedy trial, in all likelihood he would have received one. His tactical decision to remain silent, therefore, was a direct and contributing cause of the delay of which he now complains.

■ We have indicated, *supra,* that Jackson's decision to remain silent weighs heavily against him when we balance it against the prejudice to his person, because he himself decided that the benefits of delaying his retrial outweighed the burdens of pretrial incarceration and anxiety. When we weigh that same conscious election not to seek a prompt trial against the State's negligence or indifference, we again find the scales tilted against appellant. His silence and the State's neglect combined to cause the delay in bringing appellant to trial, but the State's inaction was apparently inadvertent while appellant's inaction was the product of a deliberate decision.

In this case, it is not a mere failure to assert the right that outweighs the other factors; it is a deliberate, tactical decision to remain silent, which was a contributing cause of

the delay, that outweighs the State's negligence or indifference as well as the relatively slight personal prejudice and minimal prejudice to the defense. Had appellant been able to demonstrate any real, substantial prejudice to the conduct of his defense, the scales undoubtedly would have tilted the other way, but as it is, our weighing and balancing process leads us to the conclusion that appellant was not denied his constitutional right to a speedy trial.

### Instructions

Appellant complains that the trial judge erred in refusing to grant requested instructions concerning factors to be considered in assessing identification evidence and concerning credibility of witnesses.

### 1. Identification Evidence

The instruction concerning identification evidence that appellant wanted the court to read to the jury (three full typewritten pages) contained several references to the burden of proof and listed numerous factors affecting the accuracy of identification, including:

1. Adequacy of opportunity to observe the criminal actor
 - (a) length of time of observation
 - (b) distance
 - (c) whether the criminal's features were visible or disguised
 - (d) illumination
 - (e) presence or absence of distractions
2. Capacity of the witness to observe, as affected by
 - (a) stress or fright
 - (b) personal motivation, bias or prejudice
 - (c) uncorrected visual defects
 - (d) fatigue or injury
 - (e) drugs or alcohol
3. Attentiveness of the witness (did the witness know a crime was occurring or have any other reason to pay attention to what was occurring?)

4. Whether the identification is actually the product of the witness's observing
 (a) time between observation and identification
 (b) witness's capacity and state of mind at time of identification
 (c) exposure of witness to matters that might influence identification
 (d) instances of failure to make a positive identification
 (e) inconsistency between description given by witness and the appearance of the defendant
 (f) circumstances of identification (lineup, show-up, photo array or single photo, etc.).

The trial judge declined to give that instruction. Instead, he instructed the jury that if it was convinced beyond a reasonable doubt that the defendant had been identified by one or more witnesses as the person who committed the offense, that identification was sufficient for conviction, but if not convinced beyond a reasonable doubt that the defendant was the perpetrator it could not find him guilty. The jury was told to consider the testimony of all the witnesses concerning identification and give the testimony such weight as the jury thought should be given it. The judge instructed the jury that testimony of a single witness was sufficient to convict, provided that testimony was convincing beyond a reasonable doubt, but if not convinced beyond a reasonable doubt the jury must acquit the defendant.

Appellant argues that since the requested instruction was legally correct and necessary to enable the jury to weigh the evidence fairly, it was prejudicial error on the part of the trial judge not to give it to the jury.

■ Although a party is entitled to have the court give the jury instructions that correctly state the law on every issue that is fairly generated by the evidence, the court need not grant any requested instruction if the matter is fairly covered by the instructions actually given. *Harris v. State,* 11 Md.App. 658, 663, 276 A.2d 406 (1971); Md. Rule 4–325(c). In *England and Edwards v. State,* 274 Md. 264,

334 A.2d 98 (1975), one defendant requested an instruction to the effect that identification evidence should be scrutinized with extreme care and referring to possibility of human error. The Court of Appeals upheld the trial court's refusal to grant the requested instruction because the instructions actually given as to the burden of proof and weighing of evidence were deemed to have covered the identification issue.

 Appellant would have us distinguish *England* because the instruction given in that case was more detailed than the one given in this case, and contained some words of caution. We fail to see any significant difference between the instructions, as to identification, that were given in the case *sub judice* and those given in *England.* Both stressed the burden of proof and weighing the evidence. Appellant further argues that there has been a shift in authority, toward detailed cautionary instructions concerning identification evidence, since *England.*

The principal fallacy in appellant's argument is that the instructions he requested are not particularly appropriate to the facts of this case. This was not a case of a brief encounter under conditions of poor illumination. There was no suggestion in the evidence of any of the factors adversely affecting accuracy of identification that were stressed in the requested instruction. In this case the victim testified that the man who raped her and then cut her throat was the same man in whose company she had been for several hours preceding the crime, and she and other witnesses positively identified appellant as the same man who had been with her for a protracted period of time just prior to the rape and slashing. The only suggestion of any basis for doubt as to identification was the failure or refusal of the victim, during the first trial, to identify appellant as her assailant. In the second trial, the victim ascribed that failure to fear of reprisal.

Our holding, therefore, is that the trial judge committed no error in refusing to instruct the jury as requested by

appellant because the more general instruction that he did give fairly covered the identification issue that was generated by the evidence.

## 2. Credibility of Witnesses

Appellant requested the court to instruct the jury that the testimony of an admitted perjurer should always be considered with caution and weighed with great care. He argues that he was entitled to that instruction because the victim, who identified him at this trial as her assailant, admitted that her testimony at the first trial to the effect that appellant was not the assailant or, at least, that she could not identify him as such, was false. The victim explained that she had been afraid to identify appellant.

Instead of giving the requested instruction, the trial judge gave a more general instruction concerning credibility of witnesses.

The instruction that was given cautioned the jury to scrutinize the testimony and all circumstances that tend to show whether a witness is worthy of belief, including such matters as intelligence, motive, state of mind, demeanor and manner of testifying, and the extent to which testimony is supported or contradicted by other evidence. The court specifically referred to inconsistencies and discrepancies as factors that may cause the testimony of a witness to be discredited and advised that in weighing any discrepancy the jury should consider whether it involved an important matter and whether it resulted from innocent error or intentional falsehood. We believe that instruction fully and fairly covered the issue as to credibility of the witnesses, including the victim. Consequently, we find no error in the court's refusal to give the requested instruction. Md. Rule 4–325(c).

## Double Jeopardy

At the beginning of the second trial, appellant objected, on double jeopardy grounds, to being retried on the weapons charge. In view of the fact that the sentence he

received for that offense was three years concurrent to a life sentence and sentences of twenty-five and thirty years, with no eligibility for parole for at least twenty-five years, the issue does not appear to have much significance.

In any event, our examination of the record reveals that this contention has not been preserved for our review. All that appears in the record of this case is a discussion between counsel and the court to the effect that the judge who presided over the first trial discovered, after the jury had retired, that he had failed to instruct the jury on the elements of the offense of carrying a deadly weapon. *Sua sponte* he took some action, but the record in this case does not make it clear what that action was. The jury had been given a verdict sheet, and the discussion between counsel and the bench at the beginning of the retrial tends to indicate that the jury found appellant guilty on the deadly weapon charge. There is some confusion on this point, however; during the same discussion a question was raised as to whether that verdict sheet covered the indictment which included the weapon charge. We cannot tell whether the presiding judge at the first trial refused to accept a verdict on the one charge or received the verdict and then refused to pass judgment on it. Consequently, it is not clear from the record whether his action was, as the State contends, tantamount to a declaration of a mistrial. If it was a *sua sponte* declaration of a mistrial, a new line of inquiry arises because the retrial would be barred only if there was no manifest necessity to declare a mistrial. *See Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). *See also Tabbs v. State,* 43 Md.App. 20, 23, 403 A.2d 796 (1979).

Without the pertinent portions of the record of the first trial, which appellant did not introduce into evidence at any point in this case, we simply cannot tell whether there was, in fact, a mistrial and, if so, whether there was manifest necessity for it. Consequently, the lower court's determination that retrial on the deadly weapon charge was not barred by the constitutional prohibition against double jeopardy has not been shown to be erroneous.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.